## BUSINESS WOMEN'S HOLDING COMPANY v. FARMERS AND MECHANICS SAVINGS BANK OF MINNEAPOLIS.[1]

March 29, 1935.

No. 30,272.

[1]Reported in 259 N. W. 812.

*Kingman, Cross, Morley & Cant, A. L. Beardsley,* and *George G. Cowie,* for appellant.

*Carleton, Cherry & Norton,* for respondent.

HOLT, JUSTICE.

Defendant appeals from an order denying its motion in the alternative for a judgment notwithstanding the verdict or a new trial.

When the evidence was in each party moved for a directed verdict. The court directed the jury to return a verdict for plaintiff in the sum of $1,500.31 (being for $1,397.31 with interest from October 30, 1931, at six per cent per annum). The sole question on the appeal is: Does the evidence entitle plaintiff to a directed verdict? The evidence is mostly documentary. Plaintiff sued for $1,397.31, the balance of an alleged deposit in defendant's banking institution, alleged to have been wrongfully appropriated to its own use on October 30, 1931. The answer was a general denial. Of these facts there is no dispute:

Plaintiff owned a plot of ground upon which was a business block on Second avenue south near Eighth street in Minneapolis, and on November 25, 1925, gave defendant a mortgage thereon to secure the payment of plaintiff's promissory note for $135,000 with semi-annual interest at the rate of $5\frac{1}{4}$ per cent per annum. Beginning November 26, 1927, and every year thereafter, $5,000 of the principal was to be paid off. The mortgagor covenanted to keep the building insured and to pay the taxes. An instalment of $5,000 became due on the principal on November 26, 1930, and was not paid, nor was the second half of the taxes for the years 1928 and 1929 paid. Plaintiff undertook to contest the amount of those taxes before they became delinquent. Conferences and correspondence between the officers of plaintiff and defendant relative to these matters ensued. The result was that plaintiff deposited in defendant's bank the following amounts, *viz.:* December 10, 1930, $4,253.30; March 10, 1931, $735.82; and May 29, 1931, $786.

On May 27, 1931, plaintiff wrote defendant inclosing a check of $4,200 to pay the semi-annual interest due in May, 1931, and the remainder ($786) to "apply on the 1930 taxes. You have on deposit moneys belonging to us in the amount, $4,989.00. As soon as our 1930 tax statement is received, we will ask you to pay from deposits in your possession the June payment of the 1930 taxes, holding the remainder on demand. We are glad to advise you that a settlement has been made in the matter of the 1928 and 1929 taxes reducing the amount and exempting us from penalties and interest. We will pay these about July 1st."

The foregoing letter was preceded by one of April 18, 1931, from defendant stating:

"This is merely to remind you that on May 31 you must pay the first half of the 1930 taxes in order to avoid penalty. With the present condition of the taxes you can readily understand the importance of taking care of this item."

Of date May 29, 1931, defendant wrote plaintiff stating:

"We have your letter of May 27th with checks aggregating $4,200.00 to cover interest due May 26 on your mortgage No. 20378 and to apply on the 1930 taxes. * * * We are crediting to a special account for taxes the sum of $786.00. * * * We are today remitting the county treasurer $4,377.81 in payment of one-half of the 1930 taxes as shown by the statement just received from him. * * * The special tax account now is as follows:

| | | | | | |
|---|---|---|---|---|---|
| Amount of deposit here December 10, 1930 | | | | | $4,253.30 |
| " | " | " | " | March 10, 1931 | 735.82 |
| " | " | " | " | May 29, 1931 | 786.00 |

Total deposits ............................................. $5,775.12
May 29, 1931—Remittance to County Treasurer ....... $4,377.81

Balance in the account ............................ $1,397.31"

There was a sort of understanding when the first deposit of $4,253.30 was made in December, 1930, that the time of the $5,000

payment of principal due in November, 1930, would be extended, until the litigation with the state in respect to the amount of the taxes for the years 1928 and 1929 was ended. It was ended by stipulation and order filed September 21, 1931. Meanwhile defendant had begun foreclosure of the mortgage by advertisement, and at the sale held October 27, 1931, the property mortgaged was bid in by defendant for the full amount then due on the debt and foreclosure expenses. On October 30, 1931, defendant paid all unpaid delinquent taxes for the years 1928 and 1929 and to that end appropriated the balance of plaintiff's deposit.

Defendant insists that the deposits were made for a consideration and for a specific purpose; at any rate, it contends that it was a jury question as to the two first deposits. Defendant does not really claim that the $786, contained in the letter of May 27, 1931, came under the agreement of early December, 1930. It is said the two first deposits were in consideration of defendant's extending the time within which the defaulted instalment of $5,000 could be paid and was for the specific purpose of additional security that the delinquent taxes for the years 1928 and 1929 would be paid when the litigation as to the amount thereof was terminated. We deem it not necessary to determine whether the deposit was general, special, or for a specific purpose. Nor does it seem important to ascertain the terms of the verbal agreement under which the two first deposits were made. About the last of November, 1930, the situation with respect to this large mortgage was critical. A $5,000 instalment was past due; the second half of the taxes for the years 1928 and 1929 were delinquent. Plaintiff had answered in the tax proceedings and was attempting to secure a reduction of the amount, but some time would elapse before the litigation would be determined. Under date of December 2, 1930, defendant wrote plaintiff threatening foreclosure unless some arrangement could be made. Evidently this letter resulted in a meeting between Miss Countryman, acting for plaintiff, and Mr. Wallace, acting for defendant, and they arrived at some agreement or understanding under which the deposits of December 10, 1930, and March 10, 1931, were made, and defendant desisted from its

threat to foreclose. Though this agreement was based upon a valid consideration, the parties could modify or alter the agreement or substitute a new agreement in place thereof. The new agreement would be adequate consideration for abrogating the old. Authorities need not be cited to that proposition. In passing it may be said that Miss Countryman and Mr. Wallace do not greatly differ in their versions of the interviews had. It can hardly be expected that the recollection of either could be clear and exact as to what was verbally agreed upon more than three years after the talks took place. But whatever was agreed upon in December, 1930, was conclusively proved to have been altered or abrogated by the letters of May 27 and May 29, 1931, and by what was done thereunder. The language of plaintiff's letter of May 27 is plain and unambiguous, stating:

"We are inclosing check for $4,200.00 to pay our May interest payment, the remainder [$786] to apply on the 1930 taxes. You have on deposit moneys belonging, to us in the amount, $4,989.00. As soon as our 1930 tax statement is received, we will ask you to pay from deposits in your possession the June payment of the 1930 taxes, holding the remainder on demand."

Two days later defendant acknowledged the receipt of this letter and on the same date paid out the bulk of the deposit, namely, $4,377.81, for the first half of the taxes for the year 1930, and stated that the balance of the account was $1,397.31. There was no dissent to plaintiff's assertion that the $4,989 on deposit belonged to plaintiff or that defendant, after paying the first half of the taxes for 1930, should hold the remainder on demand. Not only that, in September foreclosure proceedings were instituted, and, although the contest concerning the amount of the delinquent taxes for the years 1928 and 1929 was decided by order filed September 21, 1931, defendant did not appropriate the balance to the payment of said taxes, but sold the premises in the foreclosure proceeding on October 27, 1931, subject to the unpaid taxes, bidding the same in for the full amount of its debt and the expenses of the proceedings. We think the two letters referred to and defendant's subsequent

conduct conclusively prove that the arrangement made by Miss Countryman and Mr. Wallace in the previous December was superseded and replaced by that contained in said letters, so that no material jury issue remained as to the terms under which the deposits of December and March preceding were made. The effect of bidding in the property for the full amount of the debt at a mortgage foreclosure sale, where there are unpaid taxes, is well settled in this state. The purchaser, whether mortgagee or a disinterested party, takes subject to such taxes, and for taxes not levied prior to the mortgage the covenants in the mortgage are at an end and cannot be enforced. Wyatt v. Quinby, 65 Minn. 537, 68 N. W. 109; Hamel v. Corbin, 69 Minn. 223, 72 N. W. 106; Marshall & Ilsley Bank v. Cady, 76 Minn. 112, 78 N. W. 978; Peterson v. Herington, 169 Minn. 65, 210 N. W. 617; Holt State Bank v. Hamernes, 171 Minn. 350, 214 N. W. 52; Windom Nat. Bank v. Reno, 172 Minn. 193, 214 N. W. 886.

But defendant asserts that the covenants of the mortgage are not terminated by the foreclosure sale; the sale merely transfers them to the purchaser. It is true, that in case of foreclosure the mortgage becomes a mere muniment of title. However, the usual covenants of a good and unencumbered title pass to the purchaser at the sale, whether such purchaser be the mortgagee or someone else. Lawton v. St. Paul P. L. Co. 56 Minn. 353, 57 N. W. 1061; Security Bank v. Holmes, 65 Minn. 531, 68 N. W. 113, 114, 60 A. S. R. 495; Knapp v. Foley, 140 Minn. 423, 168 N. W. 183. And there can be no doubt that for taxes levied prior to the giving of a mortgage containing covenants of warranty of title free from encumbrances, such covenants run with the land and pass to the purchaser at a foreclosure of the mortgage. In Security Bank v. Holmes, 65 Minn. 531, 536, 68 N. W. 113, 60 A. S. R. 495, it was said:

"The fact that the premises bring enough at the foreclosure sale to pay the mortgage debt does not affect the question, because, if no redemption is made, the mortgage remains, with all of its covenants, as a muniment of title, to the same extent as if it was a deed.

The purchaser at the foreclosure sale buys the title as warranted and guarded by the covenants in the mortgage."

But covenants to pay taxes accruing during the time the mortgage is in force do not seem to run with the land. A mortgagee may pay delinquent taxes before the foreclosure of his mortgage and tack the amount so paid to the debt due; or the purchaser at the foreclosure sale may pay such taxes after the sale and by proper affidavit filed add the amount so paid to the sum required to redeem from the sale. 1 & 2 Mason Minn. St. 1927, §§ 2209 and 9648. Except as so enforced, the covenant to pay taxes accruing subsequent to the giving of the mortgage terminates with a foreclosure of the mortgage which satisfies the mortgage debt. In Hitchcock v. Merrick, 18 Wis. 357, 361, Chief Justice Dixon says this:

"Covenant is collateral and subordinate to the debt, and that when the debt is extinguished the covenant can serve no further purpose. It is in the nature of an additional security for the payment of the debt—a provision inserted in the mortgage to guard against the lien being displaced and defeated by reason of the nonpayment of the accruing taxes."

And the court held such a covenant could not be enforced by the mortgagee after a foreclosure sale at which the mortgagee acquired title but was compelled to redeem the premises from a tax sale for taxes accruing between the time the mortgage was given and its foreclosure sale. Vincent v. Moore, 51 Mich. 618, 17 N. W. 81, holds that for breach of the covenant to pay taxes during the life of the mortgage redress must be had in the foreclosure proceedings, saying [51 Mich. 619]:

"All that complainants could claim by virtue of the mortgage they were bound to claim in those proceedings, and they could not at pleasure split up their demand and make the parts the subjects of separate suits."

The same principle is applied in Horrigan v. Wellmuth, 77 Mo. 542.

Defendant relies on Wood v. Pacific Surety Co. 116 Minn. 474, 134 N. W. 127, and Strimling v. Union Indemnity Co. 172 Minn. 320, 215 N. W. 67. Both are suits upon bonds given by the mortgagors, with the defendants in each case sureties, to protect against mechanics' liens, which later were adjudged superior to the title of the mortgagors. In the Wood case the mortgagee, on foreclosing his mortgage, bid in the property for the amount of the debt, but prior mechanics' liens were foreclosed and the purchaser at the lien foreclosure sale redeemed from the foreclosure of a prior mortgage; thereby plaintiff lost the title acquired through its mortgage. In the Strimling case, because of the amount of the mechanics' liens that were adjudicated superior to the mortgage, the foreclosure thereof brought a bid of only $15 from a third party, so there also was practically a total loss of the title of the security. Against such loss the bonds were to indemnify. The covenants against encumbrances run with the land and may be invoked by the mortgagee or his assign or successor in estate who is damnified by a breach. Therefore the purchaser at the mortgage foreclosure sale who suffers a loss through a breach of such covenant can maintain a suit thereon, even though the sale price equaled the debt. Neither of these cases involved the attempt to sue on the covenant of the mortgagor to pay taxes levied during the life of the mortgage after the mortgage had been foreclosed and the property had been bid in for the full amount of the debt. The principle upon which the Wood and Strimling cases were decided can have no bearing, for the defense to the appropriation of plaintiff's deposit is not based upon any counterclaim or offset under a contract that the deposit was held as security for the payment of the delinquent taxes for the years 1928 and 1929. On the contrary, our conclusion, as first above stated, is that no agreement was in existence at the time the foreclosure sale took place which authorized defendant to appropriate the $1,397.31 of plaintiff's money then on deposit to the payment of any taxes; hence the court correctly directed a verdict in favor of plaintiff. Defendant was not in position to ask for the relief granted in Sucker v. Cranmer, 127 Minn. 124, 149 N. W. 16, where the plaintiff, an assignee of the mortgagee, while the time

of redemption was running, took an assignment of a tax sale from the state and redeemed from tax certificates held by a third party; but, through inadvertence, failed to file the proper affidavit, so that the owner redeemed without payment of the amount paid for the state assignment or for the redemptions from the tax certificate. In that case we held the plaintiff might be subrogated to the rights of the state and the holder of the tax certificates from whom redemption was made. Defendant could not place itself in that position.

The order is affirmed.