Mary Kay RUDDY, et al., Appellants,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Respondent.

No. C0–99–142.

Court of Appeals of Minnesota.

July 20, 1999.

Review Denied Sept. 28, 1999.*

* Stringer, J., took no part in the consideration     or decision of this case.

Sharon L. Van Dyck, Larry E. Stern, Schwebel, Goetz & Sieben, P.A., Minneapolis, for appellants.

Emilio R. Giuliani, Jr., Thomas R. Johnson, Labore & Giuliani, Ltd., Hopkins, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, AMUNDSON, Judge, and SCHULTZ, Judge.

## OPINION

SCHULTZ, Judge.**

This case presents the question of whether an insured may settle a negligence claim with an out-of-state tortfeasor and later bring an uninsured motorist claim because the tortfeasor was insured for an amount below the Minnesota minimum. The district court granted summary judgment in favor of the uninsured motorist carrier, concluding appellants were not entitled to recover under their uninsured motorist coverage after settling and receiving payment from the tortfeasor's liability carrier. The district court also concluded appellants, Mary Kay and William Ruddy, forfeited their claim because they did not comply with the term of their policy requiring the insured to bring suit against both the tortfeasor and the insurer. We reverse.

## FACTS

On August 10, 1994, Mary Kay Ruddy was a passenger in a vehicle that was rear-ended by Matthew Nord in Osceola, Wisconsin. Nord was insured by All Nation Insurance Company (All Nation) under a Wisconsin insurance policy with liability limits of $25,000 per person, $50,000 per accident. Ruddy brought a negligence claim against Nord. Those parties reached a settlement through mediation. Under the settlement, All Nation was to pay Ruddy $17,000 on behalf of Nord with the

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

understanding that Ruddy would seek further compensation for her injuries through an uninsured motorist claim.

By a letter dated May 15, 1997, Ruddy's attorney notified her insurer, respondent State Farm Insurance Company (State Farm), of the pending settlement. The notice identified the insured, the tortfeasor and his insurer, and disclosed the limits of the tortfeasor's liability insurance as well as the agreed upon settlement amount. The notice gave State Farm 30 days during which it could choose to exchange its check for that of All Nation.

On June 17, 1997, Ruddy signed the release accompanying the $17,000 check from All Nation, and added language at the bottom of the release. The body of the release stated in pertinent part that

> [the $17,000] draft is accepted in full compromise settlement and satisfaction of, and as sole consideration for the final release and discharge of all actions, claims and demands whatsoever, that now exist, or may hereafter accrue, against [Nord] and [All Nation], and any other person, corporation, association or partnership charged with responsibility for injuries to the person and property of the undersigned and the consequences flowing therefrom, as the result of the accident, casualty or event which occurred on or about the 10th day of August, 1994 at or near Osceola, Wisconsin.
>
> * * * *
>
> The undersigned agrees * * * that it is a full and final release of all claims * * *.

The following language was added to the release at the time Ruddy signed it:

> THIS RELEASE IS NOT INTENDED AS A RELEASE OF ANY PAST, PRESENT OR FUTURE BENEFITS UNDER THE MINNESOTA NO-FAULT ACT, INCLUDING UNINSURED OR UNDERINSURED MOTORIST BENEFITS.

Appellants filed the complaint in the instant matter on December 10, 1997, seeking damages under their uninsured motorist coverage. State Farm moved for summary judgment. The district court granted summary judgment in favor of State Farm and dismissed appellants' complaint. This appeal followed.

## ISSUES

I. Did appellants forfeit their uninsured motorist claim by settling with Nord and receiving payment from his liability carrier?

II. Did appellants forfeit their uninsured motorist claim by failing to bring suit against both State Farm and Nord?

## ANALYSIS

On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). In making its determinations, "the court must view the evidence in the light most favorable to the nonmoving party." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994). No deference need be given to the district court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ Under the Minnesota No-fault Automobile Insurance Act, Minn.Stat. § 65B.41–65B.71 (1998) an "uninsured motor vehicle" is defined as "a motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect." Minn.Stat. § 65B.43, subd. 16. Minn.Stat. § 65B.49, subd. 3(1) requires that:

> Each plan of reparation security shall also contain stated limits of liability, exclusive of interest and costs, with respect to each vehicle for which coverage

is thereby granted, of not less than $30,-000 because of bodily injury to one person in any one accident and, subject to said limit for one person, of not less than $60,000 because of injury to two or more persons in any one accident * * *.

Consequently, a vehicle may be both "uninsured" because it has liability limits less than those required by statute and "underinsured" because its liability limits are insufficient to compensate for actual damages. *Murphy v. Milbank Mut. Ins. Co.*, 388 N.W.2d 732, 737 (Minn.1986); *see also* Minn.Stat. § 65B.43, subd. 17 (1998) (defining "underinsured motor vehicle"). This type of duplicative coverage only arises when an insured "has an accident in a foreign state with a foreign vehicle having lower liability limits than Minnesota." *Murphy*, 388 N.W.2d at 737; *see also* Minn.Stat. § 65B.50, subd. 2 (providing that the liability limits on an out-of-state vehicle are deemed to be at least the Minnesota statutory minimum while the vehicle is in Minnesota).

Because Nord's automobile policy had liability limits of only $25,000, appellants could have potentially recovered under either uninsured or underinsured coverage, but not both. *See Murphy*, 388 N.W.2d at 737 (stating No–Fault Act does not allow for duplicative recoveries).

In dismissing appellants' complaint, the district court relied on two decisions of this court for the proposition that an insured may not recover under uninsured motorist coverage after settling with the alleged tortfeasor's liability insurer. *See National Family Ins. v. Bunton*, 509 N.W.2d 565, 567–68 (Minn.App.1993); *Jones v. Sentry Ins. Co.*, 462 N.W.2d 90, 91–92 (Minn.App. 1990). But those cases did not involve the unique factual context involved here.

In *Jones*, Andrew Kyles was killed in a one-vehicle accident. *Jones*, 462 N.W.2d at 91. Kyles was a passenger in the vehicle driven by his brother, who carried no insurance. *Id.* At the time of the accident, the decedent was insured under a policy with Sentry Insurance Company providing $50,000 in uninsured motorist coverage. *Id.* The vehicle was owned by Stone's Auto Mart. *Id.* Stone's insurers initially denied coverage, but eventually settled all claims by a payment of less than policy limits, although continuing to deny liability. *Id.* After recovering from the liability insurers, Jones, trustee for the heirs and next of kin of Kyles, brought a declaratory judgment action against Sentry to establish coverage under the uninsured motorist policy. *Id.* The district court granted summary judgment and this court affirmed, concluding that "[a] motor vehicle is * * * *not uninsured* if a liability carrier initially denies coverage and settles without ever admitting coverage." *Id.* at 91 (emphasis added).

In *Bunton*, plaintiffs were passengers in a vehicle when the driver lost control and collided with a telephone pole after driving over some liquid fertilizer on the road. *Bunton*, 509 N.W.2d at 566. An investigation indicated the fertilizer was spilled from a truck owned by Joseph Tessier. *Id.* When Tessier denied liability, plaintiffs sought uninsured motorist coverage under the unidentified hit-and-run clauses in their policies. *Id.* The parties then settled the underlying liability action without assigning liability. *Id.* The district court granted summary judgment in favor of the uninsured motorist carriers and this court affirmed, concluding the carriers' "potential liability under their UM policies ended when appellants accepted settlement offers from Tessier's liability insurer despite the liability insurer's continued denial of liability." *Id.* at 568.

■ Both *Jones* and *Bunton* were decided based on the *definition* of an uninsured motorist. Because plaintiffs in each case settled with the alleged tortfeasor's liability carrier, the tortfeasors were not uninsured. In the instant case, by contrast, no settlement could remove the label of "uninsured" from Nord's vehicle. By virtue of the fact that his liability coverage was below the Minnesota minimum, his

vehicle was "uninsured" under the No–Fault Act. *See* Minn.Stat. §§ 65B.43, subd. 16, 65B.49, subd. 3(1). Therefore, *Jones* and *Bunton* do not control the outcome here.

Although the supreme court has not directly ruled on a case involving an uninsured motorist claim after settlement with the uninsured tortfeasor, it has given the issue some consideration. The supreme court recognized in *State Farm Mut. Auto. Ins. Co. v. Galloway*, 373 N.W.2d 301 (Minn.1985), that an uninsured motorist carrier could be prejudiced by a claimant's settlement with the uninsured motorist. *Id.* at 306–07. Nevertheless, the court rejected the notion of fashioning a remedy for uninsured motorist cases similar to that outlined in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983),[1] for underinsured motorist claims. The court did not extend the *Schmidt v. Clothier* notice procedures to uninsured motorist cases because

> *Schmidt v. Clothier* involved underinsured motorist coverage, where the settlement dynamics are quite different, where the concern was that the underinsurer, because of maneuvering between the claimant and the insured tortfeasor could be placed "at an unfair disadvantage in which it had no control over the insured's right to settle but yet had to pay the difference between the settlement and the liability limits."

*Galloway*, 373 N.W.2d at 306 (quoting *Schmidt*, 338 N.W.2d at 261). Instead, the court suggested, based on the language of the insurance policy involved, that an insured should secure the consent of the insurer prior to settlement with an uninsured motorist. *Id.* at 306.

But the *Galloway* case, like *Jones* and *Bunton,* involved a more traditional uninsured motorist claim. Those courts did not contemplate the factual context presented in the instant case, where the tort-feasor is "uninsured" because he is underinsured under the No–Fault Act. *See* Minn.Stat. §§ 65B.43, subd. 16 and 65B.49, subd. 3(1). In the instant case, the settlement dynamics are identical to those involving underinsured motorist coverage. In fact, appellants could have brought either an underinsured or an uninsured motorist claim. *See Murphy*, 388 N.W.2d at 737.

■ Since the *Galloway* decision, the supreme court has on one other occasion considered the applicability of *Schmidt v. Clothier* where an "uninsured" motorist is actually insured. *See Liberty Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 463 N.W.2d 750, 754 (Minn.1990) (discussing settlement dynamics in uninsured/underinsured cases). The *Liberty Mutual* court stated:

> Prior to trial of the action against the tortfeasor, the proposed settlement is designed to fix the liability of the tortfeasor and the tortfeasor's insurer, thereby expediting pursuit of the insured's claim pursuant to the *uninsured/underinsured* motorist coverage of the insured's automobile policy. (FN3) Inasmuch as settlement is achieved by release of all claims against the tortfeasor, the insured must proceed in accordance with the dictates of *Schmidt v. Clothier* in order to avoid breach of the insurance contract.

*Id.* (emphasis added). In a footnote, the court explained its inclusion of "uninsured" in the above-quoted language, stating "[u]nder certain limited circumstances, the insured's claim could fall within the uninsured motorist coverage despite the existence of some liability insurance." *Id.* at 754 n. 3. Thus, the *Liberty Mutual* court anticipated the situation with which we are currently presented and considered *Schmidt v. Clothier* notice adequate to protect the insurer's subrogation interest and

---

1. *Schmidt v. Clothier* provides a claimant must give the underinsurer written notice of a tentative settlement agreement with the underinsured, after which the underinsurer has 30 days to decide whether to substitute its check for the amount of the settlement, thereby preserving its subrogation right. *Schmidt,* 338 N.W.2d at 263.

preserve the uninsured motorist claim. *See id.* at 754–55.

By their letter of May 15, 1997, appellants gave State Farm a *Schmidt v. Clothier* notice; identifying the tortfeasor, the tortfeasor's insurer, the amount of the proposed settlement, the tortfeasor's liability limits, and giving State Farm 30 days in which to decide whether to substitute its check and protect its subrogation interest. On the record before us, it appears State Farm did not respond within the 30–day period (except to request medical authorizations). Contrary to State Farm's contention, it could have protected its subrogation interest by substituting its check for that of All Nation, thereby preventing the settlement. *See American Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 925 (Minn.1990) (subrogation right accrues upon payment of contractual obligation). Furthermore, at the time the notice was given, appellants could have brought either an uninsured or an underinsured motorist claim. State Farm clearly could have chosen to secure its subrogation rights.

█ The purposes of the No–Fault Act include

relieving the economic hardships encountered by uncompensated accident victims, encouraging proper medical treatment by assuring prompt payment for such treatment, and speeding the administration of justice and easing the burden of litigation on the courts of this state.

*Schmidt*, 338 N.W.2d at 260 (citations omitted). Forfeiture of appellants' claim because it was brought as an uninsured rather than an underinsured motorist claim, where the statute and caselaw indicate either could be brought, and where the uninsured motorist carrier's interests have not been prejudiced, would not serve these purposes. We, therefore, conclude that under these facts, appellants did not forfeit their uninsured motorist claim by settling with Nord, the "uninsured" tortfeasor.

█ State Farm also argues that appellants released State Farm when they released Nord because, as the uninsured motorist carrier, State Farm stands in the tortfeasor's shoes. Although a party may accept payment as full satisfaction of an injury and release all claims against any other party, that result must be intended. *Clark v. Allstate Ins. Co.*, 405 N.W.2d 463, 465 (Minn.App.1987), *review denied* (Minn. Jul. 9, 1987). "The fundamental approach to construing contracts is to allow the intent of the parties to prevail." *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). As this court stated regarding a similar release in *Clark*,

[C]onsiderations of practical justice require us to say that a plaintiff should not be compelled to surrender his claim for relief * * * unless he has intentionally done so, or unless he has received full compensation for his claim. Of course, where full satisfaction has been made, or where it is agreed that the amount paid under the release is accepted in full satisfaction, no claim should remain * * *. But these are questions of fact to be resolved by the jury.

*Clark*, 405 N.W.2d at 465–66 (quoting *Couillard v. Charles T. Miller Hosp., Inc.*, 253 Minn. 418, 427, 92 N.W.2d 96, 102 (1958)).

█ Appellants concede the language they stamped on the release introduced a conflict in the language of the release. But they have submitted the affidavit of Nord's attorney, asserting the parties never intended the release to include claims against State Farm. Therefore, a material fact question remains and summary judgment as to the scope of the release is not appropriate.

## II.

█ The district court also determined appellants' claims were forfeited because of their failure to file suit against both the tortfeasor and State Farm as required under their uninsured motorist policy with State Farm. The district court

cited dictum from an unpublished case of this court in support of its conclusion.

But Minnesota courts have historically been reluctant

> to declare a forfeiture of insurance benefits as a consequence of the insured's breach of the policy provisions absent a showing that the insurer has been prejudiced thereby.

*Baumann*, 459 N.W.2d at 926–27. State Farm asserts it would be prejudiced because, having already settled with appellants, Nord would have no incentive to cooperate with State Farm and provide information that could reduce the percentage of his fault or otherwise reduce liability. But State Farm provides no reason to believe Nord would not testify truthfully if subpoenaed. State Farm is no more prejudiced by appellants' breach here than it would have been had appellants brought this claim as an underinsured motorist claim.

■ Furthermore, an action for uninsured motorist benefits is a contract action rather than a tort action. State Farm has promised to pay appellants for damages caused by an uninsured motorist under this statutorily mandated coverage. *See* Minn.Stat. § 65B.48, subd. 1 (1998). The action is a direct action by the insured against the insurer for an alleged breach of that promise. *See, e.g., Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229, 1232 (Md.Ct.App.1979) (holding uninsured motorist claim was properly brought against insurer alone). We therefore conclude appellants did not forfeit their uninsured motorist claim by failing to bring suit against both Nord and State Farm.

## DECISION

Appellants did not forfeit their uninsured motorist claim by settling with the out-of-state uninsured tortfeasor more than 30 days after giving their insurer a valid *Schmidt v. Clothier* notice. Nor did appellants' failure to fulfill the terms of the insurance policy result in forfeiture of

their claim where the insurer was not prejudiced by the failure.

**Reversed.**