961 P.2d 1171

**Joel KARASAWA, Plaintiff–Appellant,**

v.

**TIG INSURANCE COMPANY,**
**Defendant–Appellee**

No. 20458.

Intermediate Court of Appeals of Hawaiʻi.

July 24, 1998.

Burton D. Gould, on the brief, Paia, for plaintiff-appellant.

Melvyn M. Miyagi and Irene C. Sun (Reid, Richards & Miyagi, of counsel), Honolulu, on the brief, for defendant-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

WATANABE, Judge.

The sole question presented by this appeal is whether an injured party covered by an uninsured motorist (UM) insurance policy may recover under that policy for the apportioned negligence of an uninsured tortfeasor even though there are "concurrent tortfeasors, jointly responsible" for the injured party's injuries, who have liability insurance policies with total policy limits greater than the amount of the total judgment entered in favor of the injured party. The Second Circuit Court (circuit court) answered the foregoing question in the negative, essentially concluding that UM insurance provides secondary, rather than primary, coverage, and accordingly, granted summary judgment and judgment in favor of Defendant–Appellee TIG Insurance Company (TIG), the UM carrier for Plaintiff–Appellant Joel Karasawa (Karasawa).

We vacate and remand for further proceedings.

## BACKGROUND

On April 28, 1994, Karasawa was traveling on Hāna Highway towards Holomua Road in Kīhei, County of Maui, when an unknown vehicle identified only as a "white van" suddenly made a left turn at Holomua Road and drove off. (The driver of the unidentified white van will hereafter be referred to as "Uninsured Motorist.[1]") Karasawa braked to avoid hitting the white van, and the vehicle driven by Defendant Elizabeth Reny, also known as Elizabeth McGain, Elizabeth Raney, and Elizabeth Raney–McGain (Reny), rear-ended Karasawa's vehicle. Behind Reny was a two-ton truck driven by Defendant Christopher Young (Young). Young was also unable to stop in time and rear-ended Reny's vehicle while it was still in contact with Karasawa's vehicle. Although Reny's initial collision with Karasawa was minor, the second collision set in motion by Young's rear-ending of Reny's vehicle caused property damage and injury to Karasawa, Reny, and a passenger in Reny's vehicle.

Karasawa subsequently brought a tort action against Reny and Young, which action was referred to the Court Annexed Arbitration Program.[2] Following hearings held on January 5 and 9, 1996, the arbitrator issued an Arbitration Award dated January 9, 1996, which stated, in relevant part:

> The arbitrator finds that the defendants, including the uninsured motorist, are concurrent tortfeasors, jointly responsible for

**1.** Hawai'i Revised Statutes (HRS) § 431:10C–103(22) (1993), which is part of HRS chapter 431, article 10C, the Hawai'i Motor Vehicle Insurance Law, defines "uninsured motor vehicle" as any of the following:

> (A) A motor vehicle for which there is no bodily injury liability insurance or self-insurance applicable at the time of the accident; or
>
> (B) *An unidentified motor vehicle that causes an accident resulting in injury* provided the accident is reported to the police or proper governmental authority, and claimant notifies the claimant's insurer within thirty days or as soon as practicable thereafter, that the claimant or the claimant's legal representative has a legal action arising out of the accident.
>
> (Emphasis added.)

**2.** "The Court Annexed Arbitration Program (the Program) is a mandatory, non-binding arbitration program ... for certain civil cases in the State of Hawai'i." Hawai'i Arbitration Rules (HAR) Rule 1. "The purpose of the Program is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters to be designated by the Judicial Arbitration Commission." HAR Rule 2. Pursuant to HAR Rule 6(A), "[a]ll tort cases ... having a probable jury award value, not reduced by the issue of liability and not in excess of One Hundred Fifty Thousand Dollars ($150,000.00) exclusive of interest and costs, may be accepted into the Program at the discretion of the Judicial Arbitration Commission." If a case is submitted or ordered to the Program, an arbitrator is either selected by the parties or assigned to arbitrate the case. HAR Rules 9 and 10. The arbitrator must generally hold a hearing and file a written arbitration award "no later than nine (9) months from the date of service of the complaint to all defendants, or the Order of Arbitration by the Arbitration Judge," HAR Rule 15, and the arbitrator's award is thereafter entered as a final judgment of the court "[i]f, after twenty (20) days after the award is served upon the parties, no party has filed a written Notice of Appeal and Request for Trial *De Novo* [.]" HAR Rule 21. In the event a Notice of Appeal and a Request for Trial *De Novo* is filed, however, the arbitration award is sealed by the clerk of the circuit court. HAR Rule 23. If the appellant fails, upon a trial *de novo*, "to improve upon the arbitration award by 30% or more[,]" the appellant is subject to possible sanctions for such failure. HAR Rules 25 and 26.

[Karasawa's] injury. *F. Harper & James, The Law of Torts 2nd Ed. § 20.3 at 114 (1986)* [sic].

The percentage liability is as follows:

| Uninsured Motorist | 60% |
| [Reny] | 15% |
| Young | 25% |

The arbitrator finds [Karasawa's] special damages in the sum of Eleven Thousand Twenty Two and 79/100 ($11,022.79) dollars. *Walsh v. Chang*, [80 Hawai'i 188, 907 P.2d 774], 1995 WL 554010 (Haw.App. 1995) [sic].

The arbitrator finds that apportionment of damages is appropriate in the case because of preexisting symptomatic injuries to the body parts injured in this incident. Making a rough apportionment; *Loui v. Oakley*, 50 Hawaii [sic] 260, 264 [438 P.2d 393] (1968); [sic] the arbitrator finds that the damages be reduced by twenty-five per cent (25%).

The arbitrator finds that [Karasawa] last sought treatment for the incident in December of 1994, approximately eight (8) months post-accident. General damages, without reduction for apportionment, are awarded in the sum of Twelve Thousand Five Hundred ($12,500.00) dollars. When reduced by apportionment, the General Damage award is Nine Thousand Three Hundred Seventy Five ($9,375.00) dollars. When reduced by apportionment, the Special Damage award is Eight Thousand Two Hundred Sixty Seven and 09/100 ($8,267.09) dollars.

Because no party filed a written notice of appeal and a request for trial *de novo* within twenty days, the arbitrator's award was entered as a final judgment in the circuit court on February 1, 1996, pursuant to Hawai'i Arbitration Rules (HAR) Rule 21. Karasawa thereafter settled with Reny for $2,646.31 (15% of $17,642.09) and with Young for $4,410.52 (25% of $17,642.09). Karasawa signed joint tortfeasor release and indemnification agreements with both Reny and Young.

At the time of the accident, Karasawa's vehicle was insured by TIG. The policy included UM coverage in the amount of $100,-000 per person/per accident. When Karasawa attempted to collect the remaining amount of damages from TIG under his UM policy, TIG refused to pay, claiming in a February 13, 1996 letter that

[s]ince the two defendants [Reny] and Young were found 15% & 25% respectively at fault for this accident, it appears that due to HRS [Hawai'i Revised Statutes] 663–11, that they would be jointly and severally responsible for the entire award.

Karasawa thereafter filed an action for declaratory judgment to determine the rights of the parties and to require TIG to pay UM benefits to him.

On November 25, 1996, TIG filed a motion for summary judgment on grounds that "TIG was not named as a party in the underlying tort action and thus, any judgment is nonbinding as to it, and, further, because UM insurance is excess coverage and the named joint tortfeasors have otherwise adequate insurance." Following a December 18, 1996 hearing on TIG's summary judgment motion, the circuit court granted the motion by an order filed on December 30, 1996 and entered judgment in TIG's favor on January 22, 1997. This timely appeal was filed by Karasawa on January 29, 1997.

## STANDARD OF REVIEW

A circuit court's summary judgment order is reviewed *de novo* under the same standard applied by the circuit court. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 231, 948 P.2d 1055, 1072 (1997) (citations omitted).

## DISCUSSION

In granting summary judgment in TIG's favor, the circuit court orally ruled that the underlying tort action was

a typical joint several liability case. . . . [T]he purpose of this [UM] coverage is to provide coverage when [there] isn't any

insurance. And there was, and I'm going to go ahead and grant the motion.

The circuit court did not consider whether Karasawa's failure to name TIG as a party to the underlying tort suit against Reny and Young rendered the judgment in the tort suit non-binding as to TIG; accordingly, we express no opinion as to the merits of this alleged ground for summary judgment.

Karasawa contends that the circuit court was wrong in (1) concluding that pursuant to the arbitration award, Reny, Young, and Uninsured Motorist were joint and several tortfeasors, and (2) determining that because Reny and Young were jointly and severally liable and had sufficient liability insurance to cover the entire arbitration award, TIG was not liable to pay for the portion of Karasawa's damages attributable to Uninsured Motorist.

We disagree with Karasawa as to his first contention but agree as to his second contention.

### A. Reny And Young Were Joint And Several Tortfeasors

■ In *Montalvo v. Lopez*, 77 Hawai'i 282, 884 P.2d 345 (1994), the Hawai'i Supreme Court explained that multiple tortfeasors can be categorized as either joint, concurrent, or successive:

Defendants who were acting together, so as to share a common duty, are joint tortfeasors. Characterized as concurrent tortfeasors have been those defendants, one of whose negligence set forth in motion a series of events upon which the other's negligence acted so as to produce the end result. The final category is successive tortfeasors, whose negligent acts are wholly unrelated in time and causation.

*In the instances of joint or concurrent tortfeasors it is intuitively clear that there can result only one injury.* In the case of successive tortfeasors, however, the injuries are inflicted by separate, discrete impacts and it therefore would seem that the plaintiff ought to be able to ascribe to each wrongdoer responsibility for only the damages he [or she] caused.

*Id.* at 295, 884 P.2d at 358 (emphasis added) (quoting *Phennah v. Whalen,* 28 Wash.App. 19, 22, 621 P.2d 1304, 1306 (1980), *rev. denied,* 95 Wash.2d 1026 (1981) ellipses and brackets omitted)).

In this case, the arbitrator found "that the defendants, including [Uninsured Motorist], [were] *concurrent tortfeasors, jointly responsible* for [Karasawa's] injury." (Emphasis added.) Karasawa contends that the key word in the arbitrator's finding was "concurrent" and the circuit court erred when it focused on the word "joint." In light of *Montalvo,* however, it is irrelevant whether Reny and Young were "concurrent" or "joint" tortfeasors because in either case, "there can result only one injury." *Id.*

■ In motor vehicle accident cases such as the one involved in this case, Hawai'i Revised Statutes (HRS) § 663–10.9 (1993 & Supp.1997) [3] imposes "joint and several liability" on "joint tortfeasors as defined in [HRS] § 663–11 [ (1993) ]." HRS § 663–11 (1993) defines "joint tortfeasors," for purposes of the Uniform Contribution Among Tortfeasors Act (Act), HRS chapter 663, part II, as "*two or more persons jointly or severally liable in tort for the same injury to person*

---

3. HRS § 663–10.9 (1993 & Supp.1997) provides, in relevant part:

**Abolition of joint and several liability; exceptions.** Joint and several liability for joint tortfeasors as defined in section 663–11 is abolished except in the following circumstances:
* * *
(2) For the recovery of economic and noneconomic damages against joint tortfeasors in actions involving:
* * *
(F) Torts relating to motor vehicle accidents except as provided in paragraph (4).
* * *

(4) For recovery of noneconomic damages in motor vehicle accidents involving tort actions relating to the maintenance and design of highways including actions involving guardrails, utility poles, street and directional signs, and any other highway-related device upon a *showing that the affected joint* tortfeasor was given reasonable prior notice of a prior occurrence under similar circumstances to the occurrence upon which the tort claim is based. In actions in which the affected joint tortfeasor has not been shown to have had such reasonable prior notice, the recovery of noneconomic damages shall be as provided in paragraph (3).

*or property,* whether or not judgment has been recovered against all or some of them." (Emphasis added.) In other words, tortfeasors are "joint" for purposes of the Act if they individually or collectively cause the same injury.

Under *Montalvo's* categorization of multiple tortfeasors, both "joint" and "concurrent" tortfeasors would be "joint tortfeasors" as defined in HRS § 663–11, since "only one injury" can result from their torts. *Montalvo* at 295, 884 P.2d at 358. As "joint tortfeasors," they are jointly and severally liable for the injury they caused to an injured party, HRS § 663–10.9, and the injured party is entitled to collect his or her entire damages from either tortfeasor.

Karasawa maintains, however, that the arbitrator could not have intended that Reny, Young, and Uninsured Motorist be held "jointly and severally" liable to Karasawa because the arbitrator made an "exact apportionment" of the negligence of Reny, Young, and Uninsured Motorist. We disagree.

Pursuant to HRS § 663–12 (1993):

The right of contribution exists among joint tortfeasors.

\* \* \*

When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, subject to section 663–17.

HRS § 663–17 (1993) further provides in relevant part:

**Third-party practice; enforcement of right to contribution.**

\* \* \*

(b) A pleader may either (1) state as a cross-claim against a coparty any claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant; or (2) *move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tortfeasors one of whom has discharged the judgment by payment or has paid more than the joint tortfeasor's pro rata share thereof.* If relief can be obtained as provided in this paragraph no independent action shall be maintained to enforce the claim for contribution.

(c) *As among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of section 663–12 applies only if the issue of proportionate fault is litigated between them by pleading in that action.*

(Emphases added.)

In this case, we do not have the record of the arbitration proceeding before us and therefore do not know whether cross-claims or third-party claims were filed by either Reny or Young. Pursuant to the quoted statutes, however, it is clear that the arbitrator's apportionment of negligence did not affect the right of Karasawa to recover his entire arbitration award from either Reny or Young, who both remained individually liable for the entire award. To the extent that either Reny or Young paid more than his or her pro rata share of the award, the arbitrator's apportionment enabled Reny or Young to seek contribution for the overpaid amount from a joint or concurrent tortfeasor.

### B. *UM Insurance Provides Primary, Not Secondary, Coverage*

The issue of whether an injured party is entitled to recover under his or her UM policy even though a joint tortfeasor has sufficient liability coverage to compensate the injured party for his or her injuries is one of first impression in Hawai'i. However, other courts have addressed the issue and come to different conclusions. *See* Annotation, *Right to Recover Under Uninsured or Underinsured Motorist Insurance for Injuries Attributable to Joint Tortfeasors, One of Whom is Insured,* 24 A.L.R.4th 63 (1983). The differences in the court holdings "appear to be attributable to differences in ... views as to whether the relevant statute was intended to provide recovery under [UM] insurance only if no alternative source of compensation was available, or whether recovery was intended whenever an uninsured motor vehicle

or motorist was liable for the injuries." *Id.* § 2[a] at 67.

In *Bayles v. State Farm Mut. Auto. Ins. Co.*, 483 So.2d 402 (Fla.1985), for example, the Florida Supreme Court was called upon to answer the following question:

Where two tortfeasors are jointly and severally liable for damages caused to a third person in an automobile accident, although one tortfeasor is uninsured, if the other tortfeasor has liability insurance with policy limits equal to, or greater than, those contained in [UM] coverage possessed by the injured third person, can the injured third person recover under his [or her] own [UM] policy?

*Id.* at 402–03.

Responding to the question in the negative, the supreme court noted that the Florida statute requiring UM protection specifically provided that

[t]he coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured ... from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

*Id.* at 403 (emphasis added). The court also observed that the underlying philosophy of UM coverage is that "when there is a fund available to compensate an injured insured, as in the case of joint tortfeasors, one of whom is insured at least to the extent of the amount of the injured party's UM coverage, there is no need to resort to the injured party's own ... [UM] insurance." The court concluded that since the injured party could "be made whole by resorting to the insured tortfeasor's liability insurance benefits, the purpose for which UM coverage is mandated is not called into play." *Id.* at 404. *See also Fouquier v. Travelers Ins. Co.*, 204 So.2d 400 (La.App.1967) (holding that an injured party had no right to recover under a UM policy

even though an uninsured motorist was jointly liable with an insured motorist, if the insured motorist's liability policy limit was sufficient to satisfy the injured party's damages).

Other courts, on the other hand, have allowed a plaintiff to recover the full limit of a UM policy even though an insured tortfeasor had liability insurance sufficient to compensate all of the plaintiff's damages. In *Tholen v. Carney*, 555 F.2d 479 (5th Cir.1977), for example, the Court of Appeals for the Fifth Circuit held that under the applicable UM policy,[4] the UM insurer's liability was not secondary to other sources for recovery. *Id.* at 481. The court reasoned as follows:

Analysis starts with certain basic principles, well recognized in this [Alabama] jurisdiction: Where there are several joint tortfeasors responsible for the plaintiff's damages, the plaintiff is entitled to judgment in the full amount against each, as if the others did not exist. That is, there is no apportionment of damages among joint tortfeasors. The plaintiff can seek recovery of these judgments against all or any of the judgment debtors; however, to prevent "double recovery", amounts recovered from one reduce the amounts recoverable from the others. The tortfeasors do not by reason of unequal payments to the plaintiff obtain a right of contribution from the other tortfeasors.

It follows that the [plaintiffs], armed with judgments against both Carney and Greenhaw, are entitled to collect, if they can, the entire amount of the judgments from Carney alone; and this is so even though Greenhaw is insured. Yet, under its policy, Safeco has agreed "to pay all sums which the insured ... shall be legally entitled to recover as damages from the ... operator of an uninsured motor vehicle"; i.e., to pay the [plaintiffs] all sums which they are legally entitled to recover from Carney.

---

4. The uninsured motorist (UM) policy construed in *Tholen v. Carney*, 555 F.2d 479 (5th Cir.1977) provided, partly, as follows:

Any loss payable under the terms of this coverage shall be reduced by: * * * (3) all sums paid by or on behalf of the owner or

operator of the uninsured motor vehicle and any other person or organization jointly or severally liable together with such owner or operator for bodily injury to an insured.

*Id.* at 480.

Safeco would argue that other language in the policy limits its liability to situations where there are no other jointly liable persons from whom the plaintiffs could recover their judgments. The provision so relied upon, however, reads as follows:

"Any loss payable under the terms of this coverage shall be reduced by: * * * (3) all sums paid by or on behalf of the owner or operator of the uninsured motor vehicle and any other person or organization jointly or severally liable together with such owner or operator for bodily injury to an insured."

This clause does no more than prevent double recoveries. It does not make Safeco's liability secondary to other sources for recovery.

*Id.* at 480–81. *See also Harleysville Mut. Ins. Co. v. Nationwide Mut. Ins. Co.,* 789 F.2d 272 (4th Cir.1986) (holding that under Virginia law, an insured who obtained a joint judgment against both a known and unknown tortfeasor could seek satisfaction of the entire judgment from his or her own UM insurer before exhausting the known tortfeasors' liability insurance); *Gentry v. City Mut. Ins. Co.,* 66 Ill.App.3d 730, 23 Ill.Dec. 495, 384 N.E.2d 131 (1978) (holding that UM coverage is available to a person injured by the concurrent negligence of two or more parties, only one of which is uninsured; injured party's right of recovery is not eliminated by presence of an insured motor vehicle in the same accident); *Harthcock v. State Farm Mut. Auto. Ins. Co.,* 248 So.2d 456 (Miss. 1971) (holding that UM coverage is mandatory by statute and insurer's coverage cannot be diminished by an "excess insurance" clause in the policy); *Motorists Mut. Ins. Co. v. Tomanski,* 27 Ohio St.2d 222, 271 N.E.2d 924 (1971) (holding that right of recovery under UM provision of contract was not eliminated by presence of an insured motor vehicle in the same accident).

After examining the different approaches taken with respect to the issue at hand, we conclude that under the Hawai'i motor vehicle insurance statutory scheme, no requirement exists that an injured party exhaust the liability policies of all joint tortfeasors before making a claim against his or her UM policy.

Under the Hawai'i statutory scheme, "[a]n insurer shall offer the insured the opportunity to purchase [UM] coverage[.]" HRS § 431:10C–301(d) (1993). Furthermore, HRS § 431:10C–301(b)(3) (1993) requires that motor vehicle insurance policies offer the option of UM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom[.]"

The option of UM coverage was first mandated by the Hawai'i legislature in 1965 when it enacted into law House Bill No. 26. According to the legislative history of the bill, the purpose of UM coverage was to offer protection

for any *uncollectible* valid claim or unsatisfied judgment for damages resulting from the ownership, maintenance or use of an automobile. The claim becomes payable when the innocent victim shows that his [or her] claim is valid, that is, there is legal liability on the person alleged to be responsible and that *the claim cannot be collected because of the financial irresponsibility of that person or because of the inability to identify the person or persons responsible.*

(Emphases added.) Stand. Comm. Rep. No. 194 on H.B. No. 26 in 1965 House Journal, at 582. The House Committee on Judiciary, which authored the foregoing committee report, noted:

In testimony on this bill, instances have been cited where persons have suffered extensive personal injuries and property damages and found that the guilty motorist was financially irresponsible and without any liability insurance. Your Committee believes that if the general public knows about the availability of such insurance, and if the insurance companies are compelled to offer it, many of these tragic circumstances can be avoided.

*Id.* Nothing in the history of the bill indicates a legislative intent to make UM coverage available only if the liability policies for other

tortfeasors are unavailable or have been exhausted.

Indeed, the Hawaiʻi Supreme Court has explained that the purpose of UM statutes such as HRS § 431:10C–301(b)(3) is

> to provide a remedy where injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause. This recourse is provided, then, to cover the situation of a wrongful or tortious act of an uninsured motorist or a hit and run driver, or that of another unknown motorist.... Ideally the purpose is to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance.

*Dawes v. First Ins. Co. of Hawaiʻi, Limited,* 77 Hawaii 117, 122–23, 883 P.2d 38, 44 (1994) (quoting 8C Appleman, *Insurance Law and Practice* § 5067.45 at 41–46 (1981) (brackets omitted)).

■ In light of the foregoing purpose and the legislative history of the UM statute, it seems clear that an injured party should be able to hold a UM carrier liable for all personal injuries and property damages attributable to an uninsured motorist. There is no requirement in Hawaiʻi that other sources of recovery, e.g., the insurance policy of a joint tortfeasor, be exhausted first.[5]

■ TIG points out, however, that the terms of Karasawa's UM policy with TIG expressly provided:

Any amount payable under the [UM] Coverage shall be excess to the amount of No–Fault benefits paid or *payable* to a "covered person" whose claim for such benefits meets the requirements of the Hawaii [Hawaiʻi] No–Fault Law.

(Emphasis added.) TIG contends that based on the foregoing language, its obligation to pay under its UM policy did not arise unless the liability policies of Reny and Young were insufficient to cover the entire judgment in Karasawa's favor. We disagree. The foregoing clause provides only that TIG's obligation to pay Karasawa under the UM clause is excess to its obligation to pay no-fault benefits to Karasawa; the clause does not address the joint tortfeasor situation present here. Moreover, a no-fault benefits offset clause similar to the foregoing clause was struck down by the Hawaiʻi Supreme Court as violative of the UM statutes. *Sol v. AIG Hawaii Ins. Co.,* 76 Hawaiʻi 304, 309, 875 P.2d 921, 926 (1994).

In light of the foregoing, we vacate the circuit court's December 30, 1996 "Order Granting Defendant TIG Insurance Company's Motion for Summary Judgment, Filed on 11/25/96" and the circuit court's January 22, 1997 judgment and remand for further proceedings.

---

5. Of course, as we pointed out recently in *AIG Hawaii Ins. Co. v. Rutledge,* 87 Hawaiʻi 337, 955 P.2d 1069 (App.1998), where a UM insurer pays UM benefits to an injured party and the injured party subsequently obtains a tort recovery from a joint tortfeasor which fully compensates the injured party for damages sustained in the accident, including damages attributable to an uninsured motorist, the UM insurer is entitled to be reimbursed for the UM benefits paid. *Id.* at 338, 955 P.2d at 1070. In this case, Plaintiff-Appellant Joel Karasawa did not recover from the insured joint tortfeasors any damages attributable to the uninsured motorist. Hence, no double recovery situation was present.