AIG HAWAII INSURANCE COMPANY, INC., Plaintiff-Appellant/Cross-Appellee,
v.
STATE FARM INSURANCE COMPANIES, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY Defendants-Appellees/Cross-Appellants, and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; and DOE PARTNERSHIPS 1-10, Defendants.
No. 27789
Intermediate Court of Appeals of Hawaii.
October 8, 2008
On the briefs: Roy F. Epstein, Carlos D. Perez-Mesa, (Epstein & Perez-Mesa), for Plaintiff-Appellant/Cross-Appellee
Richard B. Miller, Patricia Kehau Wall, (Tom Petrus & Miller, LLLC), for Defendants/Appellees/Cross-Appellants.

MEMORANDUM OPINION
FOLEY, Presiding Judge, FUJISE and LEONARD, J
Plaintiff-Appellant/Cross-Appellee AIG Hawaii Insurance Company (AIG) appeals from a judgment filed on January 31, 2006 (Judgment) in the Circuit Court of the First Circuit (Circuit Court)[1] The Circuit Court entered Judgment in favor of Defendants-Appellees Cross-Appellants State Farm Insurance Companies and State Farm Mutual Automobile Insurance Company (State Farm), and awarded State Farm costs and attorneys fees in the total amount of $6,521.91. AIG filed a timely notice of appeal on February 27, 2006. State Farm filed a notice of crossappeal on March 8, 2006.
On appeal, AIG argues that the Circuit Court erred in: (1) denying its motion for summary judgment on the issue of whether State Farm's insured, Julie Manuel (Manuel), made a valid assignment of her uninsured motorist (UM) benefits to AIG; (2) granting State Farm's motion for summary judgment on the grounds that AIG was not entitled to UM benefits under State Farm's policy because Manuel had been fully compensated for her damages; and (3) awarding State Farm attorneys' and because the underlying claim was not in the nature of assumpsit.
On cross-appeal, State Farm argues the Circuit Court erred in denying its motion for summary judgment on the issue of whether Manuel made a valid assignment to AIG of her interest in UM benefits.
For the reasons set forth below, hold that: (1) the Circuit Court erred in denying AIG's motion for summary judgment on the issue of whether Manuel's assignment of her right to UM benefits under State Farm's policy to AIG was valid; (2) the Circuit Court did not err in granting State Farm's motion for summary judgment, as AIG was not entitled to UM benefits because Manuel had been fully compensated; and (3) the Circuit Court did not abuse its discretion in partially awarding State Farm's requested attorneys' fees and costs. Accordingly, we affirm.

I. RELEVANT FACTS
The relevant facts are undisputed. On February 11, 1999, Manuel was driving westbound on Ala Moana Boulevard when a vehicle in an adjacent lane suddenly cut in front of her, causing Manuel to hit her brakes to avoid a collision. Juan Negron (Negron), the driver of the vehicle traveling behind Manuel, was unable to similarly stop and collided with the rear-end of Manuel's vehicle. The driver of the vehicle that cut in front of Manuel was never identified. At the time of the incident, Negron was insured by AIG for bodily injury coverage and Manuel was insured by State Farm for UM and underinsured motorist (UIM) benefits.
Manuel subsequently brought an action against Negron for her injuries and the matter was submitted to the Court Annexed Arbitration Program (CAAP). On April 18, 2000, the arbitrator awarded Manuel $29,228.26, representing $15,000 in general damages and $14,228.26 in special damages. Negron appealed the award.
Thereafter, on July 11, 2000, AIG agreed to pay Manuel $20,000 in exchange for an assignment of her interest in the UM benefits under her policy with State Farm. In a letter dated June 4, 2001, AIG informed State Farm of the assignment and asserted a claim for UM benefits. The exact amount of UM benefits sought by AIG is unclear from the record. In a letter dated July 30, 2001, State Farm rejected AIG's UM claim, arguing that AIG did not qualify as an insured under its policy, and that the purported assignment was invalid because State Farm did not give its required consent.
In the meantime, Manuel made a demand for UIM benefits under her policy with State Farm. State Farm offered to pay Manuel an additional $13,500 in UIM benefits. Manuel accepted the settlement of her UIM claim on July 26, 2001.
On February 13, 2002, AIG filed a First Amended Complaint against State Farm in the Circuit Court seeking, inter alia: (1) damages in the amount paid to Julie Manuel by AIG plus prejudgment interest; (2) assignment of an arbitrator for the UM demand; and (3) its costs and reasonable attorneys' fees.
On July 15, 2002, AIG filed a motion for mummary judgment, arguing: (1) Manuel validly assigned her right to receive UM benefits from State Farm to AIG; (2) AIG is entitled to have its UM claim arbitrated; and (3) State Farm was not required to give its consent to the assignment.
State Farm filed a cross-motion for summary judgment on August 2, 2002, arguing, inter alia, that: (1) AIG is not entitled to invoke the arbitration clause under its policy because it does not meet the definition of "insured;" (2) the assignment is invalid; and (3) even if the assignment was valid, AIG has failed to demonstrate that Manuel has an undisputed right to compel UM arbitration.
The Circuit Court denied both motions on September 9, 2002 and September 10, 2002, respectively. On July 1, 2004, AIG and State Farm submitted an amended stipulation to stay case pending arbitration and order, for a determination of liability of the uninsured motorist, and the amount of damages sustained by Manuel as a result of the February 11, 1999 incident.
On July 29, 2005, the arbitrator, Bert Sakud determined that Manuel sustained injuries totaling $33,500. After applying a covered loss deductible of $10,000, the arbitrator concluded the net value of Manuel's claim was $23,500.00. Sakuda also found that Negron was two-thirds at fault for the incident and the unidentified vehicle was one-third at fault.
Based on the arbitration award, State Farm filed a second motion for summary judgment on October 7, 2005, arguing that Manuel was fully compensated for her injuries and AIG was therefore not entitled to any UM benefits.
AIG filed a memorandum in opposition on October 28, 2005, arguing, inter alia, State Farm was not entitled to summary judgment based on the doctrine of unclean hands. On November 8, 2005, the Circuit Court granted State Farm's motion, stating: "[biased on the Arbitration Award issued on July 29, 2005, Julie Manuel has been fully compensated for any injuries she sustained in the accident on February 11, 1999, therefore neither she nor AIG has any right to Uninsured Motorist benefits under the policy issued to Julie Manuel by State Farm."
On December 5, 2005, State Farm filed a motion for attorneys' fees and costs totaling $26,296.23, under Hawaii Revised Statutes (HRS) § 607-14 and Hawaii Rules of Civil Procedure (HRCP) Rule 54(d). AIG filed its memorandum in opposition on December 29, 2005, arguing State Farm was not entitled to fees and costs absent a finding of frivolousness.
On January 13, 2006, the Circuit Court awarded State Farm $5,000 in attorneys' fees and $1,521.91 in costs. Judgment was entered on January 31, 2006. AIG filed its notice of appeal on February 27, 2006. State Farm filed its notice of crossappeal on March 8, 2006.

II. ISSUES ON APPEAL
On appeal, AIG maintains that the lower court erred in:
(1) denying AIG's motion for summary judgment on the validity of Manuel's assignment to AIG of the UM benefits under Manuel's policy issued by State Farm, as part of a negotiated settlement;
(2) granting State Farms motion for summary judgment on the grounds that State Farm's insured, Manuel, had been fully compensated through the combination of bodily injury settlement and UIM benefits, and thus her Assignee, AIG, is not entitled to seek UM benefits; and
(3) concluding as a matter of law that AIG's declaratory action as to State Farm's policy, was a matter in assumpsit and, therefore, State Farm was entitled to an award of attorney fees.
In its cross-appeal, State Farm maintains a single point of error:
The Circuit Court erred when it denied State Farm's cross-motion for summary judgment filed August 2, 2002 on the issue of whether Manuel's assignment to AIG was valid.

III. STANDARDS OF REVIEW
We review the Circuit Court's grant or denial of summary judgment de novo under the same standard applied by the Circuit Court. Amfac, Inc. v. Waikiki Beachcomber Inv. Co. 74 Haw. 85, 104, 839 P.2d 10, 22 (1992). As we have often articulated:
[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
Roxas v. Marcos, 89 Hawai`i 91, 116, 969 P.2d 1209, 1234 (1998) (citations and internal quotation marks omitted).
We review a trial court's grant or denial of attorneys' fees and costs under the abuse of discretion standard. Price v. AIG Hawai`i Ins. Co. 107 Hawai`i 106, 110, 111 P.3d 1, 5 (2005).
The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.
Enoka v. AIG Hawai`i Ins. Co. Inc., 109 Hawai`i 537, 544, 128 P.3d 850, 857 (2006) (citations omitted).

IV. DISCUSSION

A. The Validity of the Assignment
On appeal, AIG and State Farm argue that the Circuit Court erred in denying their respective motions for summary judgment on the issue of whether Manuel's assignment of her UM benefits to AIG was valid. AIG argues that, as the assignee of Manuel, it was entitled to assert her rights to seek UM benefits under State Farm's policy.
In general, [a]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." Fireman's Fund Ins. Co. v. AIG Hawaii Ins. Co., Inc. 109 Hawaii 343, 349, 126 P.3d 386, 392 (2006) (citation omitted). Furthermore, where an assignment is challenged, "the presumption is in favor of assignment." TransWorld Airlines, Inc. v. Ame. Coupon Exch., Inc., 913 F.2d 676, 685 (9th Cir. 1990); see also Silvers v. Sony Pictures Entm't., Inc., 402 F.3d 881, 902 (9th Cir. 2005) ("It is well-established that contract rights are assignable at common law.") (quoting Restatement (Second) of Contracts § 317 (2) (b) (1979)).
In relevant part, the Restatement (Second) of Contracts 317 (1981) provides:
Assignment Of A Right
(1) An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.
(2) A contractual right can be assigned unless
(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or
(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or
(c) assignment is validly precluded by contract.
On cross-appeal, State Farm contends the assignment is invalid because it "materially increases the uncertainty and risk to State Farm" and "the assignment does not make clear whether State Farm continues to owe a duty of good faith to Ms. Manuel following the assignment." In support of its argument, State Farm cites Liberty Life Assur. Co. of Boston Stone Street Capital, Inc. 93 F. Supp. 2d 630, 634 (D. Md. 2000).
In Stone Street, the court found that an injured party's assignment of periodic payments from a structured settlement with insurer to a financial firm was invalid, because the assignment and resulting acceleration of payments could potentially affect a favorable tax treatment the insurer had bargained for in a Settlement Agreement with the injured party. Id. at 636-37.
Here, in contrast, State Farm is unable to point to any similarly specific risk or burden it could face as a result of Manuel's assignment. Although State Farm argues the assignment creates confusion over whether Manuel is still owed a duty of good faith, we do not believe this is a material uncertainty or risk. Indeed, according to Comment d. of the Restatement, "[w]hen the obligor's duty is to pay money, a change in the person to whom the payment is to be made is not ordinarily material." Restatement (Second) of Contracts § 317, Comment d (1981); See also Liberty Mut. Ins. Co. v. American Family Mut. Ins. Co., 463 N.W.2d 750, 755-56 (Minn. 1990) ("[T]he assignment of the insured's interest in an existing claim for [UM and UIM] benefits pursuant to a contract of insurance . . . was not an assignment prohibited by law."). Here, similarly, Manuel's assignment transferred her contractual right to receive UM payments, if available, to AIG. Thus, we find there was no material increase of any burden or risk to State Farm by virtue of the assignment.
Alternatively, State Farm claims the assignment violates public policy because the primary goal of UM coverage is to provide full compensation to an insured and "paying the balance [of UM benefits] to AIG would deprive Ms. Manuel of the full compensation the law was designed to provide her." For support, State Farm cites Walton v. State Farm Mut. Auto Ins. Co., 55 Haw. 326, 518 P.2d 1399 (1974), where the court held that an insurer's policy provision, which purported to provide UM benefits only to the extent that its limits exceeded the UM limits of any other available insurance, was invalid. It 331-32, 518 P.2d at 1402-03. The Walton court emphasized that "[c]ompensation of the injured party is the more important focus of inquiry." Id. at 332, 518 P.2d at 1403. The court therefore permitted the insured to recover the maximum amount of UM benefits from both his own insurer and the host driver's insurer, and thus recover $20,000 of his $25,000 in damages. Id.
Walton is clearly distinguishable. Here, there is no policy provision that precluded Manuel from receiving full compensation; rather, Manuel willingly contracted for her $20,000 settlement with AIG. Furthermore, the record shows Manuel has, in fact, been fully compensated for her injuries through both her settlement with AIG and later UIM settlement with State Farm, wherein she received a combined total of $33,500 (the exact amount of sustained injuries determined by arbitrator Sakuda).
In addition, although State Farm argues the assignment would "frustrat[e] the legislative objective of optional protection at the least possible cost," State Farm has failed to provide any discernable argument as to how the assignment in this case threatens to increase the cost of UM coverage in any way. We therefore reject, under the circumstances of this case, State Farm's argument that Manuel's assignment to AIG violates public policy.
Finally, State Farm argues that the assignment from Manuel to AIG lacks consideration and was made in bad faith because AIG was already under a legal obligation to render the promised performance. State Farm claims, "Ms. Manuel was forced to surrender her right to full compensation in order to obtain benefits from AIG to which she was legally entitled." This argument also lacks merit.
On April 18, 2000, the arbitrator determined Manuel's injuries were $29,228.26, but he did not make an apportionment of liability between Manuel, Negron, and the unidentified driver. Therefore, it is difficult to imagine how AIG was somehow under a preexisting duty to pay Manuel $20,000 when it settled with her on July 11, 2000. In addition, Manuel clearly received a benefit when she made the assignment, as she was able to bypass the time an appeal could have taken before she would receive payment. See Douglass v. Pflueger Hawaii, Inc., 110 Hawai`i 520, 534, 135 P.3d 129, 143 (2006) ("Consideration is defined as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment.")
We conclude that Manuel's assignment of her UM benefits under her State Farm policy to AIG was valid. Accordingly, the Circuit Court erred when it denied AIG's motion for summary judgment regarding the validity of the assignment. For the reasons discussed below, however, the error is harmless.

B. The Assigned UM Benefits,
AIG contends that the Circuit Court erred in granting State Farm's motion for summary judgment and concluding AIG was not entitled to recover UM benefits because Manuel had been fully compensated for her damages.
On November 8, 2005, the Circuit Court held:
Based on the Arbitration Award issued on July 29, 2005, Julie Manuel has been fully compensated for any injuries she sustained in the accident on February 11, 1999, therefore neither she nor AIG has any right to Uninsured Motorist benefits under the policy issued to Julie Manuel by State Farm.
Hawafi's UM statute, HRS § 431:10C-301 (2005), provides in relevant part:
(b) A motor vehicle insurance policy shall include:. . . .
(3). . . liability coverage provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom . .
This court has previously held that double recovery of damages through the collection of UM benefits is prohibited. See AIG Hawaii Ins. Co., Inc. v. Rutledge, 87 Hawai`i 337, 344, 955 P.2d 1069, 1076 (App. 1998). In Rutledge, two family members were injured when an unidentified driver caused them to swerve their car out of its path and into a boulder. Their insurer, AIG, paid UM benefits to the Rutledges pursuant to their policy. Id. at 338, 955 P.2d at 1070. The Rutledges then sued the City and County of Honolulu, alleging negligence in the design of the roadway and the maintenance of the shoulder. After an arbitrator apportioned liability between the Rutledges, the unidentified driver, and the City, the City paid the Rutledges damages which fully compensated them for their damages. Id. at 1072, 1080, 955 P.2d at 340, 348. AIG subsequently demanded reimbursement of the UM benefits it had paid. Id.
In determining whether AIG was entitled to such reimbursement, this court noted that the purposes of the UM statute were "to promote protection . . . for persons who are injured by uninsured motorists who cannot pay for personal injuries caused by motor vehicle accidents" and "to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance."[2] Id. at 1074-75, 955 P.2d at 1074-75 (citation omitted).
In light of the legislative history of Hawai`i's UM statute, the Rutledge court held that if an insured receives UM benefits from his insurer, and the insured later receives a tort recovery from a joint tortfeasor which fully compensates him, the insured must reimburse the UM benefits paid to the extent there is "duplicative recovery of damages." Id. at 1077-78, 955 P.2d at 345-46. Accordingly, the court held that because the payments by the joint tortfeasor City placed the Rutledges in the same position as they would have occupied had the unidentified driver been identified and fully insured, the UM benefits paid by AIG should be reimbursed. Id. at 1080-81, 955 P.2d at 348-49.
Even though Rutledge does not involve an assignment of rights, we believe the court's holding is clear: an insured may only recover benefits until he or she has been fully compensated for all damages. See also Walton v. State Farm Nut. Auto. Ins. Co., 55 Haw. 326, 332, 518 P.2d 1399, 1403 (1974) ("[T]here would be inequity only if insured tried to or `stack' several policy provisions to build up to a sum beyond his damage, and thus gain a windfall.").
Despite its concession that Rutledge is valid law, AIG nevertheless argues this courts decision in Karasawa TIG Ins. Co., 88 Hawai`i 77, 961 P.2d 1171 (1998), permits i recover UM benefits from State Farm.
In Karasawa, an unidentified driver made a sudden left turn, causing Karasawa to brake suddenly and the two vehicles behind him to rear-end his vehicle. Id. at 78, 961 P.2d at 1172. Karasawa subsequently brought a tort action against both drivers involved in the accident, and the matter was submitted to arbitration. Id. The arbitrator apportioned liability between the two drivers and the unidentified vehicle, concluding the three were "joint and several tortfeasors." Id. at 78-79, 961 P.2d at 1172-73. Thereafter, Karasawa settled his claims with the two identified drivers for their respective percentages of liability and also made a demand upon his own insurer, TIG, for UM coverage. Id. at 79, 961 P.2d at 1173.
TIG refused to pay, claiming the two identified drivers, as joint tortfeasors, were jointly and severally liable for the entire award, and had sufficient insurance to cover the entire arbitration award; therefore, TIG was not liable to pay any UM benefits. Id. at 80, 961 P.2d at 1174.
Although noting that Hawaii's UM statute was meant to protect against any "uncollectible" claims, this court concluded that Karasawa was not precluded from seeking UM benefits under his policy. Id. at 83, 961 P.2d at 1177. The court held: "Nothing in the history of the bill indicates a legislative intent to make UM coverage available only if the liability policies for other tortfeasors are unavailable or have been exhausted." Id. at 83-84, 961 P.2d at 1177-78. Instead, the court reasoned that "an injured party should be able to hold a UM carrier liable for all personal injuries and property damages attributable to an uninsured motorist." Id. at 84, 6 P.2d at 1178.
Unlike the present case, however, Karasawa did not concern the issue of an insured who was fully compensated before UM benefits were sought. In fact, the Karasawa court was careful to note that "where a UM insurer pays UM benefits. . . and the injured party subsequently obtains a tort recovery from a joint tortfeasor which fully compensates [him]. . . for damages. . ., including damages attributable to an uninsured motorist, the UM insurer is entitled to be reimbursed," thereby affirming this court's holding in Rutledge regarding double recovery. Therefore, Karasawa does not support AIG's argument that AIG is entitled to UM benefits once Manuel had been fully compensated.
AIG does not dispute that Manuel has received full compensation for her damages. As the assignee of Manuel's rights, AIG stands "in the shoes of" Manuel, and may not recover more than Manuel would be entitled to under her policy with State Farm. Therefore, we conclude AIG was not entitled to seek UM benefits from State Farm because Manuel had been fully compensated for her injuries and allowing AIG to recover would result in "duplicative recovery of damages."
AIG also argues that State Farm was not entitled to summary judgment on the grounds that Manuel was fully compensated because it acted with "unclean hands." According to AIG:
STATE FARM knew AIG's request for UM benefits under Ms. Manuel's policy, purposefully chose to ignore it, and settled Ms. Manuel's [UIM] claim. Such payment was done at their own peril and cannot now be used as the basis of their defense that Ms. Manuel has been fully compensated and thus she cannot pursue her UM benefits. Such a position is inequitable and is, by its nature the very definition of "unclean hands."
. . . .
STATE FARM's intentional resolution of Ms. Manuel's UIM claim on July 26, 2001 and failing to notify AIG of this settlement until after it has occurred is a classic example of "unclean hands."
"The `unclean hands' doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 329-30 (1994)(citation omitted). In order to assert a claim that one has acte with "unclean hands," however, "some fraudulent or dishonest practice must be shown; some attempted abuse of process; or some conduct evidently contrary to equity and good conscience." Lucas American Hawaiian Engg & Constr. Co. 16 Haw. 80, 85 (1904).
There is no evidence supporting AIG's assertion of unclean hands. Here, AIG sought and received an assignment from Manuel for her interest in UM benefits under State Farm's policy. As such, Manuel had a remaining, valid claim for UIM benefit which she later settled with State Farm for $13,500. AIG cites no authority, nor are we aware of any, that supports its argument that an insurer who settles a valid claim with its insured has somehow acted in bad faith. We note that AIG itself had settled with Manuel without seeking State Farm's consent for the assignment of UM benefits under the State Farm policy.[3]
For these reasons, we conclude that the Circuit Court did not err when it granted State Farm's motion for summary judgment.

C. Attorneys' Fees
In its January 13, 2006 order, the Circuit Court awarded State Farm's fees and costs as follows:
Based on H.R.S. Section 607-14, State Farm is awarded attorneys' fees in the amount of $5,000 (25% of $20,000, which was the amount prayed for by AIG in its First Amended Complaint), and costs in the amount of $1,521.91.
HRS 607-14 (Supp. 2005) provides in part:
Attorneys' fees in actions in the nature of assumpsit, etc. In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.
On appeal, AIG contends that the Circuit Court erred in awarding fees and costs to State Farm, and argues that HRS 431:10-242, not HRS § 607-14, applies to the present action because its "request that the court determine that it had a valid assignment of UM benefits from Julie Manuel and that a UM arbitrator be assigned" is "declaratory in nature and not a matter in assumpsit." HRS 431:10-242 (2005) provides:
Policyholder and other suits against insurer. Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy.
(Emphasis added.)
HRS § 431:10-242 (2005) is inapplicable to the present case because State Farm was not ordered to "pay benefits. Rather, the Circuit Court found that State Farm had no obligation to pay UM benefits to AIG because Manuel had been fully compensated. See Mickelson v. USAA, 108 Hawai`i 358, 360-61, 120 P.2d 257, 259-60 (2005) (finding an insurer was not ordered to "pay benefits" within the meaning of HRS § 431:10-242 because the court had only made a determination on the issue of coverage, and the amount of benefits were to be determined later through arbitration).
AIG's requested claim for UM benefits is also clearly "in the nature of assumpsit" under HRS 607-14. "Under Hawaii case law, an action in the nature of assumpsit includes all possible contract claims." Leslie Estate of Tavares, 93 Hawai`i 994 P.2d 1047, 1051 (2000) (citation and internal quotation marks omitted); 808 Dev. LLC Murakami 111 Hawai`i 349, 366, 141 P.3d 996, 1013 (2006) ("Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well quasi contractual obligations.") (citation, emphasis, and quotation marks omitted); Cf. Chock v. Gov't. Employees Ins. Co., 103 Hawaii 263, 268, 81 P.3d 1178, 1183 (2003) (concluding that "when the recovery of money damages is not the basis of a claim factually implicating a contract, the action is not `in the nature of assumpsit'") (citation omitted). Moreover, if there is any doubt about whether the action is in assumpsit or in tort, "there is a presumption that the suit is in assumpsit." Leslie, 93 Hawaii at 5-6, 994 P.2d at 1051-52 (citations omitted).
Here, AIG's Complaint sought "damages in the amount paid to [Manuel]" by virtue of the assignment, as well as "costs and reasonable attorney fees." The Complaint does not, as AIG argues, pray for any declaration by the Circuit Court.[4] Although we note that State Farm's cross-motion for summary judgment does refer to AIG's claim as a "declaratory action," we are more persuaded by the plaintiff's own characterization of the action. See Leslie, 93 Hawai`i at 6, 994 P.2d at 1052 ("[T]he character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought."); Larsen v. Pacesetter Sys., Inc., 74 Haw. 51, 837 P.2d 1273, 1298 (1992) ("The manner in which [the] plaintiff has characterized the action may also b accorded some weight.") (citation omitted).
In addition, because AIG sought "costs and reasonable attorney fees" in its Complaint, it is estopped from denying the underlying action is in nature of assumpsit. See Leslie, 93 Hawai`i at 5, 994 P.2d at 1051-52 ("a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit.") (citations omitted); Healy-Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc. 673 F.2d 284, 286 (9th Cir. 1982) ("The presumption in favor of assumpsit is strengthened when the plaintiff has prayed for attorneys' fees in his original complaint. Under Hawaii law, a plaintiff who claims statutory attorneys' fees can be estopped to deny that his action is in the nature of assumpsit.")[5] We conclude that the Circuit Court did not abuse its discretion in awarding attorneys' fees and costs to State Farm.

V. CONCLUSION
Based on the foregoing, we affirm the Circuit Court' January 31, 2006 Judgment.
NOTES
[1] The Honorable Victoria S. Marks presided.
[2] According to the Hawai`i Supreme Court in Dawes v. First Ins. Co. of Hawai`i, Ltd., 77 Hawai`i 117, 883 P.2d 38 (1994), the purpose of UM statutes, such as HRS § 431:10C-301(b)(3), is to "provide a remedy where injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause." Id. at 123, 883 P.2d at 44 (citations and footnote omitted). And, "[i]deally, the purpose is to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance. . ." Id. (citation omitted).
[3] We note that, although AIG claims it is entitled to UM benefits from State Farm through the assignment from Manuel, at other points in its opening brief, AIG asserts it is entitled to "contribution" from State Farm for the amount it overpaid to Manuel. AIG's "contribution" claim is raised for the first time on appeal; therefore, we deem this argument waived. See "State v. Sunderland, 115 Hawai`i 396, 400, 168 P.3d 526, 530 (2007) ("[A]n issue raised for the first time on appeal will not be considered by the reviewing courts)(quoting State v. Naeole, 62 Haw. 563, 570, 617 P.2d 820, 826 (1980)).
[4] Indeed, in its Motion for Summary Judgment, AIG does not characterize its earlier Complaint as one seeking declaratory relief.
[5] Although unclear from its brief, AIG also appears to argue that HRS § 431:10-242 covers situations where an insured must sue to collect policy benefits, and because § 431:10-242 is the more "specific statute," it should be favored over HRS 607-14. AIG's argument, however, is inapposite because there is no direct conflict between HRS 431:10-242 and HRS 607-14. Both HRS §§ 607-14 and 431:10-242 apply to the award of attorneys' fees: HRS § 431:10-242 applies where an insurer is ordered to pay benefits, after unsuccessfully contesting its liability over an insured, and HRS § 607-14 applies generally to actions in the nature of assumpsit and actions on promissory notes or other contracts in writing. In Richardson v. City and County of Honolulu, 76 Hawai`i 46, 55, 868 P.2d 1193, 1202 (1994), the Hawai`i Supreme Court set forth the general rule that "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other." The court explained that "where there is a `plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored. Id. (emphasis added) (citations omitted).